## COMMISSIONER OF INTERNAL REVENUE v. KRESGE DEPARTMENT STORES, Inc.

### No. 7924.

Circuit Court of Appeals, Third Circuit.
Argued July 15, 1942.

Decided Jan. 12, 1943.

Rehearing Denied March 17, 1943.

Writ of Certiorari Denied June 1, 1943.

See 63 S.Ct. 1319, 87 L.Ed. ——.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Arthur F. Egner, of Newark, N. J. (McCarter, English & Egner and Ward J. Herbert, all of Newark, N. J., on the brief), for respondent.

Before JONES and GOODRICH, Circuit Judges, and LEAHY, District Judge.

LEAHY, District Judge.

This is a petition for review of a decision of the Board of Tax Appeals, now the Tax Court of the United States, denying deficiencies claimed by the Commissioner of Internal Revenue for personal holding company surtaxes[1] in the amount of $15,714.61 for the fiscal year ending January 31, 1935 and of $7,424.25 for the year ending January 31, 1936, together with penalties for nonpayment. The Board of Tax Appeals held that taxpayer was not a personal holding company during these years, and the Commissioner contends that this holding resulted from the Board's erroneously including in taxpayer's "gross income" certain amounts it received as reimbursement for expenses.

The legal effect of these receipts is the sole issue now before us.[2]

Taxpayer was organized as a Delaware corporation in 1923. Its charter powers authorized it, inter alia, "To establish and conduct one or more general department stores" and "To act as financial, business and/or purchasing agent for domestic and foreign corporations * * *". During the taxable years involved, taxpayer owned all the capital stock of Palais Royal, Inc., owner of a department store in Washington, D. C., and a substantial minority of the stock of The Fair, owner of a department store in Chicago, Illinois. It neither directly owned nor operated any store itself.

In an attempt to increase the earnings and value of its stock in the operating department stores by obtaining for them the benefits of mass buying, taxpayer set up in New York City a central buying office to purchase merchandise primarily for these two stores and for two other department stores in which it owned no stock and apparently had no direct financial interest. On occasion, other companies utilized the mass buying facilities of the New York office. In addition to buying merchandise for the several stores, this office procured competent executives and personnel to manage the stores and planned exhibitions to attract customers. Weak departments in the various stores were analyzed, and recommendations for improvements were offered by taxpayer. It also watched markets for new items and made reports on lots of merchandise of unusual value which were available for purchase.

In the majority of instances, merchandise was purchased upon specific request and invoiced by the seller directly to the store for which it was ordered. Other items were purchased on taxpayer's account and reinvoiced at cost to the store taking them. At the end of each month the expenses of the New York buying office were calculated and were billed to the various department stores in proportion to their respective gross sales during the preceding year.[3] It is the amounts paid to

---

[1] Under Section 351 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 757.

[2] It is admitted that more than 50 percent in value of the capital stock of taxpayer was owned by not more than five individuals during the period in question. The amount of income from "royalties, dividends, interest, and gains from the sale of stock or securities" is likewise agreed upon and is conceded to be more than 80 percent of taxpayer's gross income if the latter excludes the receipts in question and less than 80 percent if it includes them.

[3] Except the Steinback-Kresge Company Store at Asbury Park, N. J., which made a flat payment of $100 per month.

taxpayer in reimbursement for its expenses which the Board held constituted part of taxpayer's "gross income" within the contemplation of Sections 22(a) and 351(b) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, pages 669, 757.

The Board found correctly that taxpayer was not a merchandising concern. Neither was it in the business of performing services for compensation. Rather it was a stockholding company and maintained the New York buying office solely for the purpose of increasing the value of its holdings. Even the stores in which it had no direct financial interest were supplied with merchandise at its gross cost— without profit to taxpayer and without loss to it.[4] All of the purchasing stores were billed directly and immediately for that part of the gross cost of the goods which represented purchase price. That this amount did not constitute part of taxpayer's gross income is unquestioned. It is our opinion that the part of gross cost representing taxpayer's operating expenses is—under the circumstances of this case— in exactly the same category as that representing purchase price. The impracticality of charging expenses to each lot of merchandise does not make income what would otherwise not be.

We are not called upon to ascertain the precise relationship between taxpayer and the stores it served. We do not determine whether the Commissioner is correct in his contention—based upon All Russian Textile Syndicate, Inc. v. Commissioner, 2d Cir., 62 F.2d 614—that it was one of principal and agent. The essence of the matter is that taxpayer was a mere conduit through which the participating stores purchased their merchandise at reduced rates. And a corporation cannot lift itself out of the class of personal holding company simply by causing nonpersonal holding company income to flow through its treasury, thereby increasing the amount of its gross income. Therefore, with the other necessary elements concededly present, taxpayer was a personal holding company.

This conclusion is in no way affected by Andrew Jergens v. Com'r, 40 B.T.A. 868,

the authority upon which the Board rested its decision. In the light of the foregoing, that case is patently inapposite, inasmuch as it was concerned with a corporation whose receipt from subsidiaries of an amount equal to a pro rata share of its expenses was found by the Board to be compensation for services rendered or rent for facilities provided.[5]

The decision of the Board of Tax Appeals is reversed.

---

[4] The Board found as a fact that "the receipts and expenses of the New York City buying office of the petitioner were equal."

[5] We are, of course, not concerned with the alternative holding of Jergens that, if the corporate entity is disregarded, there is no personal holding company income, since the parent company must then be assumed to receive its subsidiaries' income directly rather than by way of dividends.