L. C. BOHART PLUMBING & HEATING CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6871-73.     Filed July 21, 1975.

*Clarence J. Ferrari, Jr., Edward M. Alvarez,* and *Kent E. Olsen,* for the petitioner.
*Eugene H. Ciranni,* for the respondent.

---

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency of $19,611 in petitioner's Federal income tax for its taxable period ended February 28, 1969. Petitioner is a personal holding company, subject to the 70-percent tax imposed by section 541, I.R.C. 1954, with respect to its undistributed personal holding company income. Under section 545, a personal holding company may reduce its undistributed personal holding company income by an amount equal to its dividends paid deduction, as described in section 561. At issue is whether, under section 316(b)(2)(B)(ii), the controlling definition of "dividend" for this purpose, a liquidated personal holding company may retroactively designate part of its liquidating distribution as a "dividend" after the expiration of the period fixed by applicable Treasury regulations for such designation. The facts have been stipulated.

Petitioner L. C. Bohart Plumbing & Heating Co., Inc., is a California corporation which, at the time of filing its petition herein, had its principal office in Sunnyvale, Calif. Petitioner had been formed in 1955 for the purpose of engaging in the business of plumbing subcontracting which business was subsequently replaced by apartment house rentals. On September 11, 1968, petitioner's board of directors held a special meeting with petitioner's sole shareholder, Lewis C. Bohart (Bohart), at which time the directors adopted, with the approval of Bohart, resolutions authorizing the winding up and dissolution of petitioner. Among the various resolutions adopted in this regard were the following:

FURTHER RESOLVED that this corporation liquidate its assets in compliance with Internal Revenue Code § 337;
* * *

FURTHER RESOLVED that each shareholder, upon distribution to him of his proportionate part of the assets, shall be required to surrender his share certificates for cancellation and that such a distribution shall be in complete satisfaction of his rights as a shareholder of this corporation, * * *

On October 3, 1968, petitioner filed with the District Director of Internal Revenue at San Francisco, Calif., a Form 966 (Return Of Information To Be Filed By Corporations Within 30 Days After Adoption Of Resolution Or Plan Of Dissolution, Or Complete Or Partial Liquidation). Petitioner did not indicate thereon in the

space provided the existence of any amendment to its plan of dissolution.

Between December 1, 1968, and February 28, 1969, petitioner distributed all of its assets to Bohart, its sole shareholder, as provided in its plan of liquidation. At that time petitioner did not designate any part of the distribution to Bohart as a dividend, nor did it notify Bohart in writing that any part of the distribution was designated as a dividend. On its Federal income tax return, Form 1120, for the taxable period ended February 28, 1969, petitioner reported distributions of cash and property to Bohart in amounts of $62,543 and $83,250, respectively, of which it designated a portion[1] as a liquidating distribution in Form 1099L (Distributions In Liquidation During Calendar Year). It further indicated on the third page of its Form 1120 return (in response to question O) that it was not required to file either Form 1096 or 1099, relating to the payment of dividends to shareholders. Petitioner did not mark the appropriate box on its return stating that it was a personal holding company, nor did it attach a Schedule PH to its return. Schedule PH is the schedule required to be filed along with Form 1120 (the regular corporate income tax form) where the corporation is a personal holding company.

On his individual Federal income tax return for 1969, Bohart reported long-term capital gain of $83,166 received as a liquidating distribution in exchange for his stock in petitioner.

In the spring of 1969 petitioner filed a Certificate of Winding Up and Dissolution with the secretary of state of California, in which it certified that (a) the business of petitioner had been completely wound up, (b) the known debts and liabilities of petitioner had actually been paid, and (c) the known assets of petitioner had been distributed to its shareholder.

Sometime in 1970 a revenue agent commenced an audit of petitioner's final income tax return. In the course of the audit, he tentatively determined and made known to petitioner's representatives that petitioner was a personal holding company and that it was subject to personal holding company tax liability with respect to its final return. Petitioner thereupon filed an amended Federal income tax return on December 27, 1971, which differed from its earlier return in that it omitted Form

---

[1] The record does not disclose the exact amount designated as a liquidating distribution.

966 (Return Of Information To Be Filed By Corporations Within 30 Days After Adoption Of Resolution Or Plan Of Dissolution, Or Complete Or Partial Liquidation) and other information pertaining to its liquidation in place of which it attached a Schedule PH. On Schedule PH petitioner claimed a deduction of $25,469 for dividends paid on account of which it reported no undistributed personal holding company income and therefore no personal holding company tax liability. At the time of filing its amended income tax return, petitioner also filed Forms 1099L (Distributions In Liquidation During Calendar Year 1969), 1099 (information return relating to dividends paid), and 1096 (annual information return summarizing all distributions), all of which were labeled "Amended." On Form 1099 petitioner reported the payment of $25,469 to Bohart as a dividend in 1969, and on Form 1099L it reported a liquidating distribution of property valued at $57,697 to Bohart in 1969. Petitioner supplied Bohart's name, address, and identifying number on both forms.

Despite the fact that petitioner identified Bohart in its amended income tax return as the distributee of a $25,469 dividend, there is no evidence that petitioner furnished Bohart with a statement of dividend distributions made to him during the year. Bohart never filed an amended 1969 income tax return to reflect additional tax due in respect of that part of the liquidating distribution which petitioner had recharacterized as a dividend. On April 11, 1973, the Commissioner issued a notice of deficiency to Bohart in which he determined that $25,469 of the distribution made by petitioner to Bohart was a dividend taxable at ordinary income rates. The amount of the deficiency was $7,358, which Bohart thereafter paid in full.

In his notice of deficiency to petitioner, which he issued some 2 months after the notice to Bohart, the Commissioner determined that petitioner was a personal holding company for the taxable period ended February 28, 1969. The Commissioner furthermore disallowed petitioner's deduction for dividends paid, on account of which he determined that petitioner was subject to the personal holding company tax on its undistributed personal holding company income of $25,469. This determination was inconsistent with the prior determination, made in respect of Bohart, that he had received a dividend of $25,469 from petitioner.

Section 541, I.R.C. 1954, imposes a 70-percent tax on the "undistributed personal holding company income" (as defined in section 545) of every "personal holding company" (as defined in section 542). Broadly stated, the personal holding company tax is the mechanism which Congress adopted to deter the use of certain closely held corporations which, by retaining their earnings, shield the controlling stockholders in the upper brackets from tax on dividends at the top applicable rates. The highly burdensome 70-percent tax was designed, at least in part, to remove any such tax advantage otherwise available through the accumulation of earnings. See H. Rept. No. 704, 73d Cong., 2d Sess. 11-12 (1934); S. Rept. No. 558, 73d Cong., 2d Sess. 13-16 (1934); *O'Sullivan Rubber Co. v. Commissioner*, 120 F. 2d 845, 847-848 (2d Cir.); Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.20 (3d ed. 1971). But a personal holding company may mitigate the severity of the tax or, indeed, escape it altogether through relief provided by section 545(a). Because the purpose of the tax is achieved to the extent that a personal holding company distributes its earnings to its stockholders as taxable dividends, section 545(a) permits the corporation to subtract the so-called "dividends paid deduction" in computing its *undistributed* personal holding company income, the amount upon which the tax is computed. As its name suggests, the dividends paid deduction, defined in section 561(a),[2] includes "dividends paid during the taxable year." Section 561(b)(1) states that in determining the amount of the deduction for dividends paid, the rules provided in sections 562 and 563 are applicable. And section 562(a) thereupon sets forth the general rule that, for purposes of the dividends paid deduction and except as otherwise provided in section 562, the term "dividend" includes "only dividends described in section 316."

Section 316(b)(2), relating to distributions by personal holding companies, provides as follows:

---

[2] SEC. 561. DEFINITION OF DEDUCTION FOR DIVIDENDS PAID.

(a) GENERAL RULE.—The deduction for dividends paid shall be the sum of—

    (1) the dividends paid during the taxable year,

    (2) the consent dividends for the taxable year (determined under section 565), and

    (3) in the case of a personal holding company, the dividend carryover described in section 564.

SEC. 316. DIVIDEND DEFINED.

(b) SPECIAL RULES.—

* * *

(2) DISTRIBUTIONS BY PERSONAL HOLDING COMPANIES.—

(A) In the case of a corporation which—

(i) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or

(ii) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year,

the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545 without regard to distributions under this paragraph) for such year.

(B) For purposes of subparagraph (A), the term "distribution of property" includes a distribution in complete liquidation occurring within 24 months after the adoption of a plan of liquidation, but—

(i) only to the extent of the amounts distributed to distributees other than corporate shareholders, and

(ii) only to the extent that the corporation designates such amounts as a dividend distribution and duly notifies such distributees of such designation, under regulations prescribed by the Secretary or his delegate, but

(iii) not in excess of the sum of such distributees' allocable share of the undistributed personal holding company income for such year, computed without regard to this subparagraph or section 562(b).

Thus, a personal holding company is entitled to include in its dividends paid deduction the amount of those distributions which qualify as dividends under section 316(b)(2) and, accordingly under section 545(a), to reduce its undistributed personal holding company income by the same amount. More particularly, in the case of a liquidating personal holding company, section 316(b)(2)(B) enlarges the usual meaning of dividend to include distributions in complete liquidation, but with certain qualifications, the pertinent ones of which for purposes of this case are contained in subparagraph (B)(ii). By reason thereof, dividend treatment is available in respect of a liquidating distribution only to the extent that the corporation designates those amounts as dividends and notifies the distributees of such, under regulations prescribed by the Secretary. The relevant Treasury regulation, section 1.316-1(b), provides as follows:

(5) A corporation may designate as a dividend to a shareholder all or part of a distribution in complete liquidation described in section 316(b)(2)(B) and this paragraph by:

(i) Claiming a dividends paid deduction for such amount in its return for the year in which, or in respect of which, the distribution is made,

(ii) Including such amount as a dividend in Form 1099 filed in respect of such shareholder pursuant to section 6042(a) and the regulations thereunder and in a written statement of dividend payments furnished to such shareholder pursuant to section 6042(c) and sec. 1.6042-4, and

(iii) Indicating on the written statement of dividend payments furnished to such shareholder the amount included in such statement which is designated as a dividend under section 316(b)(2)(B) and this paragraph.

Section 1.316-1(b)(5)(ii) of the regulations incorporates certain portions of section 6042 and the regulations thereunder. Section 6042 details the reporting requirements in respect of the payment of dividends, which, by virtue of subsection (b), include distributions qualifying as dividends under section 316. As set forth in section 6042(a) and the accompanying section 1.6042-2, Income Tax Regs., every corporation must report on Forms 1099 and 1096 the aggregate amount of its yearly dividend payments of $10 or more along with the name, address, and identifying number of each distributee. These returns are to be filed on or before February 28 of the year following payment, which time may be extended, pursuant to section 1.6081-1(a), Income Tax Regs., a maximum of 6 months. It is further provided in section 6042(c) and section 1.6042-4, Income Tax Regs., that every corporation required to file an informational return under section 6042(a) also furnish each distributee named therein with a statement of the aggregate amount of payments to him. This statement must be furnished on or before January 31 of the year following such payments, but for good cause shown the District Director may grant an extension of time not exceeding 30 days. Whether timely compliance with the reporting requirements of section 6042 is a necessary condition of dividend treatment for purposes of the dividends paid deduction in respect of a liquidating distribution of a personal holding company is the nub of the controversy before us.

Petitioner admits that it failed to file the forms prescribed by section 6042(a) and to furnish the statement prescribed by subsection (c) within the respective times fixed in the regulations, even allowing for the maximum extensions of time. Nonetheless, it contends that the portion of its distribution to

Bohart which it later designated was a "dividend" within the meaning of section 316(b)(2)(B), and, that, just as with the distribution of dividends in the normal course of business, its character should not be altered by petitioner's failure to designate it *timely* as such, an altogether separate matter for which the Commissioner has prescribed independent safeguards. Secs. 301.6652-1(a)(i) and 301.6678-1(a)(1), Proced. & Admin. Regs. Alternatively, petitioner argues that the Commissioner's regulations in this regard are contrary to the congressional intent and therefore invalid as applied to the situation at hand. The Commissioner, on the other hand, responds that the time limits fixed by the regulations are necessary in order to achieve the legislative purpose of section 316(b)(2)(B)(ii), that of *ensuring* that liquidating distributions designated as dividends by the corporation are in fact taxed at ordinary income rates in the hands of the recipient stockholders. We agree with the Commissioner.

Petitioner attempts to draw an analogy between dividends distributed in the ordinary course of business and dividends in respect of a liquidating personal holding company, the suggested conclusion being that since timely reporting is not a necessary condition of the former it is likewise not essential to the existence of the latter. Notwithstanding the superficial plausibility of such consistency in the application of section 316, it is perfectly clear from the legislative history of section 316(b)(2)(B) that Congress regarded the treatment of liquidation distributions made by a personal holding company as a problem quite distinct from that posed by the usual dividend situation.

Prior to 1964, virtually every liquidating distribution made by a personal holding company was, by reason of section 562(b), automatically deemed to be a dividend for purposes of the dividends paid deduction without regard to whether it also qualified as a dividend under section 316. At that time section 562(b) provided:

SEC. 562. RULES APPLICABLE IN DETERMINING DIVIDENDS ELIGIBLE FOR DIVIDENDS PAID DEDUCTION.

(b) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation, the part of such distribution which is properly chargeable to earnings and profits accumulated after February 28, 1913, shall be treated as a dividend for purposes of computing the dividends paid deduction. In the case of

a complete liquidation occurring within 24 months after the adoption of a plan of liquidation, any distribution within such period pursuant to such plan shall, to the extent of the earnings and profits (computed without regard to capital losses) of the corporation for the taxable year in which such distribution is made, be treated as a dividend for purposes of computing the dividends paid deduction.

Section 316, though, did not then contain a correlative provision governing liquidating distributions. Rather, section 316(b)(2) extended dividend treatment in the case of a personal holding company to:

any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income * * * for such year.

And it was well understood both at the time of its enactment and when subsequently interpreted by the courts that "any distribution of property" to shareholders did *not* refer to distributions in complete or partial liquidation. H. Rept. No. 2333, 77th Cong., 2d Sess. 136-137 (1942); S. Rept. No. 1631, 77th Cong., 2d Sess. 176-177 (1942); *St. Louis Co. v. United States,* 237 F. 2d 151, 154-155 (3d Cir.). Accord, *Michael C. Callan,* 54 T.C. 1514, 1525-1526, affirmed per curiam 476 F. 2d 509 (9th Cir.). Thus, stockholders receiving a liquidating distribution were taxed at favorable capital gain rates regardless of the character which it assumed at the corporate level. As a result of this gap in the statutory coverage, it was possible for a personal holding company, in the year of liquidation, to claim the relief afforded by the dividends paid deduction in respect of a liquidating distribution without thereby subjecting the distribution to ordinary graduated income tax rates in the hands of the distributees. This pattern of taxation, quite obviously, ran counter to the very purpose of the personal holding company provisions for which reason Congress, in 1964, passed remedial legislation. H. Rept. No. 749, 88th Cong., 1st Sess. 82, A104 (1963); S. Rept. No. 830, 88th Cong., 2d Sess. 112 (1964).

Under the 1964 legislation, the formerly unrestricted applicability of section 562(b) was limited by the insertion of the introductory clause of current section 562(b)(1), which in relevant part states "Except in the case of a personal holding company described in section 542." [3] Revenue Act of 1964, sec.

---

[3] Sec. 562(b) was further amended by the addition of par. (2), by which the earlier dividend treatment of sec. 562(b) was retained in respect of liquidating distributions made

225(f)(3), 78 Stat. 88. At the same time section 316(b)(2) was amended by the addition of present subparagraph (B) in order to permit certain liquidating distributions made by personal holding companies to noncorporate stockholders to qualify for the dividends paid deduction, but only under conditions designed to ensure that the recipient stockholders would be taxed on such distributions at ordinary income rates. Revenue Act of 1964, sec. 225(f)(1), 78 Stat. 87-88. Thus, section 316(b)(2)(B) sets forth a single and consistent standard by which to classify liquidating distributions made by personal holding companies to non-corporate distributees for purposes of both the dividends paid deduction and the character of the distribution in the hands of the recipient stockholders.

By reason of this single definition of "dividend" applicable to both the corporation and the distributees, Congress closed the definitional gap which had in prior years allowed the corporation and its distributees to characterize the liquidating distribution differently. Having thereby achieved at least conceptual consistency, though, Congress went further and added the active requirements of section 316(b)(2)(B)(ii). Under that provision, the character of the distribution in the recipient stockholder's hands still follows the corporate level choice of treatment, but the corporation can choose the benefit of dividends treatment *only* by notifying the Internal Revenue Service (and the recipient stockholders) of its election to treat the distribution as a dividend. As explained in the House report (H. Rept. No. 749, 88th Cong., 1st Sess. 82 (1963)):

the term "dividend" is to include any amounts distributed in this liquidation to other than corporate shareholders to the extent of its undistributed income (before any deduction for this amount) only if the corporation involved designates amounts as dividends (and so notifies the distributee). If the corporation does so designate the distributions as dividends the individuals receiving a liquidating distribution from the personal holding company must report the amount so distributed as a dividend in the year of receipt. * * *

See also S. Rept. No. 830, 88th Cong., 2d Sess. 112 (1964). Thus, in addition to creating a definitional equality between dividends at both the corporate and shareholder levels, section 316(b)(2)(B)(ii) further establishes an active reporting procedure *designed to alert the Commissioner* in the case of

---

by personal holding companies, but only to *corporate* distributees.

liquidating distributions that, on account of the corporation's decision to avail itself of the benefit of the dividends paid deduction, its stockholders are not entitled to report the distribution at favorable capital gain rates.

In furtherance of this end, the Commissioner has prescribed, through regulations expressly authorized by section 316(b)(2)(B)(ii), that the designation include the name, address, and identifying number of each distributee. And it is plain to us that a limitation on the period during which such designation may be made is equally essential to the statutory purpose. Unless prompt and timely notice is required, section 316(b)(2)(B)(ii) could become an incentive for an otherwise undetected personal holding company to liquidate without disclosing its personal holding company, tax liability, thereby permitting its stockholders to escape ordinary income tax rates in respect of the liquidating distribution. The feasibility of this course, though, would depend upon the ability of the corporation, *if* its personal holding company status were discovered by the Commissioner, to *then* make use of the dividends paid deduction by recharacterizing its liquidating distribution as a dividend and thereby avoid any personal holding company tax liability. Although the Commissioner might then be able to redetermine the recipient stockholders' income in respect of the newly deemed dividends,[4] the corporation and its stockholders, once detected, would pay no more tax than had they treated the distribution as a dividend at the outset. And, of course, some corporations would remain undetected altogether. So interpreted, section 316(b)(2)(B)(ii), which was enacted to assist the Commissioner in ensuring the integration of corporate and stockholder level taxation in respect of a liquidating distribution made by a personal holding company, would instead become the *taxpayer's* assurance that, if later determined to be liable for the personal holding company tax, it could, by *then* making the required designation, compel the Commissioner to respect its recharacterized "dividend." We think it unlikely that Congress ever intended section 316(b)(2)(B)(ii) to be put to such use, whereby

---

[4] Because the Commissioner may assess the personal holding company tax any time within 6 years after the corporation files an income tax return on which it fails to identify itself properly as a personal holding company (sec. 6501(f)), it is entirely possible that the 3-year limitation on assessment generally applicable to individuals (sec. 6501(a)) may expire in respect of the recipient stockholder before the Commissioner determines the corporation's personal holding company tax liability.

the intended object of regulation would become its beneficiary, often at the expense of the fisc. By fixing the time in which a corporation may designate dividends under section 316(b)(2)(B)(ii), the regulations have, we think, reasonably used the authority granted therein to prevent a liquidating personal holding company from abusing the statute in this fashion.

In light of the foregoing, it is fatuous to suggest that a timely designation in respect of a liquidating distribution is unnecessary here because it is not necessary to the existence of an ordinary dividend. To be sure, although every corporation which distributes dividends (of $10 or more to a single stockholder) is required to notify the Commissioner thereof within a prescribed time (section 6042(a); section 1.6042-2, Income Tax Regs.), the failure to do so timely does not prevent the Commissioner from determining the existence of a dividend. See, e.g., *Sparks Nugget, Inc. v. Commissioner*, 458 F.2d 631, 636-638 (9th Cir.), affirming a Memorandum Opinion of this Court, certiorari denied 410 U.S. 928; *Sammons v. United States*, 433 F. 2d 728 (5th Cir.), certiorari denied 402 U.S. 945; *Henry Schwartz Corp.* 60 T.C. 728, 743-744; *C. F. Mueller Co.*, 55 T.C. 275, 304 n. 27, affirmed 479 F. 2d 678 (3d Cir.); *George R. Tollefsen*, 52 T.C. 671, 681, affirmed 431 F. 2d 511 (2d Cir.), certiorari denied 401 U.S. 908. Petitioners would have us conclude from this that the failure to file timely is also not dispositive in determining whether the liquidating distribution of a personal holding company is a dividend, since the same filing requirement is applicable thereto. But it hardly follows that by so filing after the prescribed time, a personal holding company can *compel* the Commissioner to recognize the existence of a dividend, as petitioner argues here. Indeed, petitioner might as well challenge the language of section 316(b)(2)(B)(ii) itself inasmuch as the Commissioner may determine the existence of an ordinary dividend absent any designation, timely or otherwise. Clearly, in enacting section 316(b)(2)(B) Congress was concerned with a problem quite distinct from the ordinary dividend situation, one in which the taxpayer's interest in obtaining dividend treatment varied according to the extent of the Commissioner's knowledge of the taxpayer's full tax liability. The only way in which the Commissioner can be *sure* that the corporation has not silently enjoyed what is tantamount to a dividends paid deduction without also exposing its shareholders to dividend treatment is to

require the corporation to bring promptly to the Commissioner's attention the manner in which it, and its stockholders, have chosen to treat the liquidating distribution.

In this regard, it is of some significance that, prior to the Commissioner's own discovery that petitioner was a personal holding company, petitioner failed entirely to alert the Commissioner to this fact. It neither checked the box on its income tax return for the taxable period identifying itself as a personal holding company nor attached the required Schedule PH. Moreover, petitioner specifically denied that it was required to file Form 1099, relating to the distribution of dividends. Instead, it filed Form 1099L, designating the entire amount in question as a liquidating distribution, *not* a dividend.[5] Indeed, during the entire process of liquidation it appears that petitioner itself regarded the distribution solely as one in liquidation. The legislative history of section 316(b)(2)(B) gives every indication that Congress had no intention to permit a corporation, by designating dividends only after the Commissioner discovered its personal holding company tax liability, to thereby *compel* the Commissioner to accept such a self-serving recharacterization. Hence, we conclude that *timely* compliance with the reporting requirements of section 1.316-1(b)(5), Income Tax Regs., as fixed by sections 1.6042-2(c) and 1.6042-4(c), Income Tax Regs., is necessary to the existence of a "dividend" within the meaning of section 316(b)(2)(B). Petitioner has failed in this respect, for which reason it is not entitled to claim a deduction of $25,469 for dividends paid in respect of its liquidating distribution, which amount is therefore includable in its undistributed personal holding company income.

Petitioner nonetheless argues that sections 1.6042-2(c) and 1.6042-4(c), Income Tax Regs., are invalid as applied to it, reasoning that they result in a "subversion and distortion of the Congressional intent." It is well settled that "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and * * * should not be overruled except for weighty reasons." *Commissioner v. South Texas Co.,* 333 U.S. 496, 501; see also *Bingler v. Johnson,* 394

[5] With respect to the statement of dividends to be furnished to the recipient stockholder, there is no evidence that petitioner ever supplied such to Bohart. In view of that fact that the burden of proving its compliance with the statute lies with petitioner, we can only conclude that petitioner did not duly notify the distributee, timely or otherwise, as expressly required by sec. 316(b)(2)(B)(ii).

U.S. 741, 749-750; *Colgate Co. v. United States,* 320 U.S. 422, 426; *Textile Mills Corp. v. Commissioner,* 314 U.S. 326, 336-339; *Fawcus Machine Co. v. United States,* 282 U.S. 375, 378; *Brewster v. Gage,* 280 U.S. 327, 336; *Boske v. Comingore,* 177 U.S. 459, 470; *Estate of William J. Ellsasser,* 61 T.C. 241, 248; *Regal, Inc.,* 53 T.C. 261, 263-264, affirmed per curiam 435 F. 2d 922 (2d Cir.); *William F. Sanford,* 50 T.C. 823, 832, affirmed 412 F. 2d 201 (2d Cir.), certiorari denied 396 U.S. 841. Contrary to petitioner's contention, we have already decided that the times fixed by the regulations for designating dividends and notifying recipient stockholders under section 316(b)(2)(B)(ii) conform well to the purpose underlying that provision. Since the regulations accurately reflect the legislative purpose, we can perceive no reason to interfere with their application here.

We are aware that section 316(b)(2)(B)(ii) may thus bring about a seemingly harsh result in the case of a liquidated personal holding company. Because the deficiency dividend procedure of section 547 is unavailable to a liquidated corporation, *Michael C. Callan,* 54 T.C. 1514, unless the corporation recognizes its personal holding company tax liability in time to make the necessary designation and notification under section 316(b)(2)(B)(ii), it is foreclosed from alleviating the heavy tax burden imposed by section 541. However, as we concluded in *Callan,* "we think that the statute leaves us with no other choice." 54 T.C. at 1529.

Finally, petitioner argues that in any event the Commissioner is estopped from determining the deficiency herein by reason of his prior inconsistent determination of a deficiency against Bohart, which Bohart paid in full. It is, however, clear beyond the necessity for discussion that the Commissioner is not estopped from determining a deficiency by reason of any prior inconsistent determination. See *Estate of Goodall v. Commissioner,* 391 F. 2d 775, 781-784 (8th Cir.), certiorari denied 393 U.S. 829; *Freeport Transport, Inc.,* 63 T.C. 107, 111, 116-117; *Brantly L. Watkins,* 53 T.C. 349, 359; *Leon R. Meyer,* 46 T.C. 65, 82-83, affirmed 383 F. 2d 883 (8th Cir.); *Nat Harrison Associates, Inc.,* 42 T.C. 601, 617. Where it is undisputed that one of two taxpayers is liable for tax in respect of a single transaction, the Commissioner is not bound to proceed against only one party at the peril of an unfavorable decision and the possible inability to thereafter pursue the other party.

Provided that the Commissioner is not acting arbitrarily, he may, in order to protect the revenues, determine inconsistent deficiencies against both parties and thereafter assume the posture of a stakeholder in the final resolution of the matter. There is no doubt here that the Commissioner's determination of a deficiency against petitioner was neither arbitrary nor with any intention to collect taxes beyond those lawfully due. That Bohart chose to pay the deficiency determined against him can hardly be said to foreclose the Commissioner from seeking a decision in respect of this taxpayer's liability. In any event, it was open to Bohart to protect his interests by filing a claim for refund after payment of the deficiency, and we have nothing before us to suggest that he has failed to do so.

*Decision will be entered for the respondent.*