BELL REALTY TRUST, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7601-74.    Filed January 21, 1976.

*John R. Berman,* for the petitioner.
*David W. Johnson,* for the respondent.

768

## OPINION

The ultimate issue in this case is whether, for the taxable years, petitioner was a "personal holding company." If so, then it was subject to the 70-percent tax imposed by section 541, I.R.C. 1954, on the undistributed personal holding company income of every personal holding company, and, as the parties have stipulated, there are deficiencies in the amounts determined by the Commissioner. Section 542(a) defines "personal holding company" to mean any corporation satisfying the following requirements:

(1) ADJUSTED ORDINARY GROSS INCOME REQUIREMENT.—At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * *

The parties have stipulated that petitioner satisfied the stock ownership requirement during each of the relevant years. They disagree, however, as to whether petitioner also met the first test

relating to the composition of its "adjusted ordinary gross income."

The "adjusted ordinary gross income" requirement is only the beginning of a convoluted statutory path which must be followed in order to compute the two quantities—"adjusted ordinary gross income" and "personal holding company income"—we are required by the terms of section 542(a)(1) to compare. Cf. *Pleasanton Gravel Co.,* 64 T.C. 510, 516. The term "personal holding company income" is itself defined in section 543(a) to mean a portion (computed in a specified manner)[2] of the "adjusted ordinary gross income," and the term "adjusted ordinary gross income" is in turn defined in section 543(b)(2) to mean "ordinary gross income," as adjusted in a specified manner. Finally, section 543(b)(1) makes clear that the term "ordinary gross income" is based upon the familiar concept of "gross income" that is fundamental in our income tax law.

However, it is not necessary for us to trace our way through these various highly complicated statutory provisions, for there is no dispute between the parties as to their application here at each step, the sole issue between them being merely whether in the first instance the interest payments which petitioner received from Abel Ford and Morris Bell were includable in petitioner's "gross income." If such payments were thus includable, it is agreed by both parties that the "adjusted ordinary gross income" requirement of section 542(a)(1) has been satisfied. We therefore proceed directly to a consideration of the crucial issue whether

---

[2] To the extent involved herein, sec. 543(a) provides:

SEC. 543. PERSONAL HOLDING COMPANY INCOME.

(a) GENERAL RULE.—For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of:

    (1) DIVIDENDS, ETC.—Dividends, interest, royalties (other than mineral, oil, or gas royalties or copyright royalties), and annuities. * * *

        * * *

    (2) RENTS.—The adjusted income from rents; except that such adjusted income shall not be included if—

        (A) such adjusted income constitutes 50 percent or more of the adjusted ordinary gross income, and

        (B) the sum of—

            (i) the dividends paid during the taxable year (determined under section 562),

            (ii) the dividends considered as paid on the last day of the taxable year under section 563(c) (as limited by the second sentence of section 563(b)), and

            (iii) the consent dividends for the taxable year (determined under section 565),

equals or exceeds the amount, if any, by which the personal holding company income for the taxable year (computed without regard to this paragraph and * * *) exceeds 10 percent of the ordinary gross income.

the Commissioner correctly included these interest payments in petitioner's "gross income."

There is no controversy between the parties that "gross income" must be determined in accordance with the definition contained in section 61 of the Code. And that definition explicitly states that gross income "means all income from whatever source derived, including (but not limited to) the following items: * * * (4) Interest." Accordingly, it would plainly appear to follow that the items of interest received by petitioner from Abel Ford and Morris Bell must be included in its gross income, thus putting an end to the entire controversy herein. Petitioner, however, argues that it should not be treated as having received any such interest, that it was a mere conduit in respect of the loans to Abel Ford and Bell Olds, and that to the extent that interest was paid by Abel Ford and Morris Bell (on behalf of Bell Olds) it was received by petitioner merely as a conduit for transmission to the Charlestown Savings Bank. We do not so view the transaction.

To be sure, petitioner's borrowings from Charlestown were motivated in large part by its intention to make the greater portion of the loan proceeds available to Abel Ford and Bell Olds. Moreover, in view of the close family situation there was no disposition to charge Abel Ford and Bell Olds a higher rate of interest than petitioner was required to pay to Charlestown. Also, Charlestown obviously was aware that the larger portion of the proceeds would find its way into the hands of Abel Ford and Bell Olds. But Charlestown made its loans to petitioner only—loans that were secured solely by petitioner's real estate and which were in no way guaranteed by Abel Ford or Bell Olds. The obligation to repay those loans was exclusively that of petitioner, and it was petitioner alone that was liable to Charlestown in respect of the interest on those loans. Neither Abel Ford nor Bell Olds had any obligation to Charlestown. Their obligations ran to petitioner. It was petitioner alone that had the right to compel repayment of the amounts which it advanced to or on behalf of Abel Ford and Bell Olds, and it was petitioner alone that had the right to receive interest on those loans.[3] When petitioner

---

[3] The separate character of these loans is underscored by the fact that if there had been a default in the repayment of petitioner's loans to Abel Ford and Bell Olds, petitioner would still have remained liable on its obligation to repay the entire indebtedness to Charlestown; similarly, a default on the part of petitioner to pay its debt to Charlestown would not have relieved Abel Ford and Bell Olds from their obligation to petitioner.

received such interest, it became petitioner's gross income.

Of course, petitioner had a right to a deduction under section 163 for interest which it paid to Charlestown. And, as a consequence, the interest that it received from Abel Ford and Bell Olds was offset by the corresponding deduction to which it was entitled when it paid its interest to Charlestown. But petitioner was not a conduit. The obligations were separate and distinct. The Code is so constructed that items of income must be included in "gross income," notwithstanding that available deductions may neutralize their tax consequences for purposes of the ordinary income tax.[4] In the case of personal holding companies, however, the concept of "gross income" was made crucial by the Congress. We have no alternative but to hold the interest received by petitioner herein must be included in its "gross income."

We are quite aware that there may be circumstances in which it may fairly be said that a party to a transaction was a "mere conduit through which the flow of borrowed funds was channeled." Cf. *Oak Hill Finance Co.,* 40 T.C. 419, 430. Cf. also *Joan A. Nunez,* 28 T.C.M. 1150. That is not the case here, however, where petitioner received the interest payments in question under its own claim of right. Such payments were *its* gross income regardless of the fact that it was under a wholly separate, although concomitant obligation, to pay interest in a still larger amount to its creditor, Charlestown, in respect of its own borrowed funds, part of which it had in turn lent to Abel Ford and Bell Olds. We are not persuaded otherwise by certain language in *United States v. Ross,* 251 F. Supp. 175, 183 (S.D. N.Y.), affirmed 368 F. 2d 455 (2d Cir.), upon which petitioner principally relies. That language was merely obiter dicta, and regardless of its validity in the light of the problem before the court in that case, we are satisfied in this case that petitioner was

---

[4] It could be quite possible that even for ordinary income tax purposes the tax consequences would not be completely neutralized in all circumstances. Thus, if interest owed by Abel Ford and Bell Olds were paid to petitioner on the last day of petitioner's tax year and if petitioner in turn paid the interest owed by it to Charlestown on the following day, petitioner would be required to report as income in the earlier year the amounts of income paid to it, but might be entitled to the offsetting deductions only on its return for the later year, with possibly different tax consequences. Of course, such result would depend upon petitioner's being a cash basis taxpayer, a fact that has not otherwise been established on this record. In any event, regardless of whether this particular petitioner were on the cash basis, the point is that such discrepancy would be possible in the case of a similarly situated cash basis taxpayer, thus emphasizing the absence of a true conduit role in circumstances like those present here.

no mere conduit in respect of the interest payments which it received for the loans which it in fact had made to Abel Ford and Bell Olds.[5] That interest was includable in its "gross income."

We are not without sympathy for petitioner's situation as a result of the circumstances in which it finds itself. In view of the exasperatingly complex statutory provisions, it may well have stumbled unwittingly into the status of a personal holding company, subject to the burdensome special tax imposed upon such entities, without any intention to achieve the end Congress sought to discourage, namely, to shield those of its shareholders that might be in the upper brackets from the tax on dividends. Cf. *L. C. Bohart Plumbing & Heating Co.,* 64 T.C. 602, 606. Nevertheless, it is well settled that the personal holding company provisions provide for a mechanical test in which the absence of such motive is irrelevant. Cf. *O'Sullivan Rubber Co. v. Commissioner,* 120 F. 2d 845, 847-848 (2d Cir.); *American Package Corp. v. Commissioner,* 125 F. 2d 413, 416-417 (4th Cir.); *Cedarburg Canning Co. v. Commissioner,* 149 F. 2d 526, 528-529 (7th Cir.); *Coshocton Securities Co.,* 26 T.C. 935. Congress, however, has provided some relief for corporations that have been adjudicated to qualify as personal holding companies, and the adverse effects of the result herein upon petitioner may be softened through its payment of deficiency dividends in accordance with the provisions of section 547.

*Decision will be entered for the respondent.*

---

[5] Petitioner also relies on *Commissioner v. Kresge Department Stores, Inc.,* 134 F. 2d 76 (3d Cir.), reversing 44 B.T.A. 1210, certiorari denied 319 U.S. 761, in which, on distinguishable facts, the court held that amounts the taxpayer corporation received from various department stores (primarily those owned by corporations in which it held stock) in reimbursement of expenses incurred in operating a central buying office for their benefit were not includable in its gross income. In reaching that result the court relied not solely on the equivalence of expenditures and reimbursements, but also on the particular relationship between the taxpayer corporation and the various entities involved. Indeed, the court distinguished without criticizing *Andrew Jergens Co.,* 40 B.T.A. 868, where on somewhat different facts the opposite result had been reached.