LAKE GERAR DEVELOPMENT COMPANY, SUCCESSOR TO HENLOPEN HOTEL CORPORATION, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6940–75, 1094–76, 1095–76,      Filed February 20, 1979.
4188–76, 4189–76.

*Fred R. Tansill, Rudy P. Hertzog,* and *Frederick J. Tansill,* for the petitioners.
*Robert E. Dallman,* for the respondent.

IRWIN, *Judge:* Respondent determined deficiencies in income and personal holding company taxes as follows:

[1]Cases of the following petitioners are consolidated herewith: Michael Fabrizio and Peggy Fabrizio, docket No. 1094–76; Francis J. Fabrizio and Louise Fabrizio, docket No. 1095–76; Lake Gerar Development Co. (formerly Henlopen Hotel Corp.), alleged transferee of Lake Gerar Hotel Corp., docket No. 4188–76; Lake Gerar Development Co. (formerly Henlopen Hotel Corp.), docket No. 4189–76.

| Taxable year ended | Docket No. | Petitioner | Deficiency |
|---|---|---|---|
| 4/30/72 | 6940–75 | Lake Gerar Development Co. | [2] $24,773.00 |
| 12/31/73 | 1094–76 | Michael and Peggy Fabrizio | 5,914.50 |
| 12/31/73 | 1095–76 | Francis J. and Louise Fabrizio | 3,763.10 |
| 4/26/72 | 4188–76 | Lake Gerar Development Co. alleged transferee of Lake Gerar Hotel Corp. | 7,807.45 |
| 4/30/73 | 4189–76 | Lake Gerar Development Co. | 9,744.01 |

After concessions by the parties, the only issue[3] remaining for our consideration is whether, in docket Nos. 6940–75 and 4188–76, Lake Gerar Development Co. is subject to personal holding company tax pursuant to section 541.[4] Resolution of this issue depends solely on whether certain interest received on a purchase-money mortgage constitutes "interest" for purposes of determining personal holding company income pursuant to section 543(a)(1) and section 1.543–1(b)(2), Income Tax Regs.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner in docket Nos. 6940–75 and 4189–76 is Lake Gerar Development Co. (formerly named Henlopen Hotel Corp.). Lake Gerar Development Co. filed its Federal corporate income tax returns for its fiscal years ending April 30, 1972 and 1973, with the District Director of Internal Revenue, Wilmington, Del. Petitioner in docket No. 4188–76 is also Lake Gerar Development

[2]The deficiency is brought against Lake Gerar Development Co. in this docket as successor to the Henlopen Hotel Corp. Michael Fabrizio and Francis Fabrizio each owned 50 percent of the issued and outstanding stock of Lake Gerar Development Co. Lake Gerar Hotel Corp., a wholly owned subsidiary of Henlopen Hotel Corp., merged into the parent and terminated its corporate existence effective Apr. 26, 1972. Henlopen Hotel Corp. then changed its name to Lake Gerar Development Co.

[3]Originally, a third issue was raised by respondent, namely, whether certain expenses incurred by Lake Gerar Hotel Corp. in its fiscal year ending Apr. 26, 1972, and by Lake Gerar Development Co. in its fiscal year ending Apr. 30, 1973, are deductible. Respondent conceded that these expenses were incurred, that they were ordinary and necessary, and that they were not capital expenditures. Respondent contended, however, that the corporations were not engaged in a "trade or business." Later, in respondent's reply brief, this latter contention was dropped. The taxpayers contend that when respondent conceded the trade or business issue, the only deficiency remaining in docket No. 4188–76 is attributable to the personal holding company tax and that there is no deficiency remaining in docket No. 4189–76. Respondent denies that his concession on this issue reduces the deficiencies as set forth above (although without setting forth any argument). We believe, however, that resolution of these issues should await a Rule 155 hearing.

[4]All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable years in issue.

Co. in its capacity as a transferee of the assets of Lake Gerar Hotel Corp. Lake Gerar Hotel Corp. filed its Federal corporate income tax return for the taxable year ending April 26, 1972, with the District Director of Internal Revenue, Wilmington, Del. At the time Lake Gerar Development Co. filed its petitions in this case, its principal place of business was in Delaware.

Petitioners in docket No. 1095–76, Francis J. and Louise Fabrizio, husband and wife, filed a joint income tax return for the calendar year 1973 with the District Director of Internal Revenue, Baltimore, Md. At the time they filed their petition herein, their legal residence was in Florida. Due to concessions by respondent, there is no longer any deficiency asserted in this docket.

Petitioners in docket No. 1094–76, Michael and Peggy Fabrizio, husband and wife, filed a joint income tax return for the calendar year 1973 with the District Director of Internal Revenue, Baltimore, Md. At the time they filed their petition herein, their legal residence was in Washington, D.C.

All corporate and individual taxpayers herein are cash basis taxpayers.

Prior to January 1970, Henlopen Hotel Corp. (hereafter Henlopen) and Lake Gerar Hotel Corp., a wholly owned subsidiary of Henlopen, owned certain property (hereafter referred to as the Henlopen Hotel) in Rehoboth Beach, Del. The property was used in the corporation's trade or business and thereby qualified as section 1231(b) property. Michael Fabrizio (hereafter Michael) and Francis Fabrizio (hereafter Francis) jointly owned a parcel of adjacent property. On January 1, 1970, Michael, Francis, Henlopen, and Lake Gerar Hotel Corp. agreed to sell the Henlopen Hotel and adjacent property to Donald Miller and on April 29, 1970, the transaction was closed. The actual purchaser, however, was Miller Properties, a limited partnership, which issued promissory notes secured by a purchase-money second mortgage to Henlopen and Lake Gerar Hotel Corp. for the purchase price.

Both corporations elected the installment method of reporting gain under section 453. Lake Gerar Hotel Corp. received

$13,824.67 of interest on the note in its fiscal year ending April 26, 1972,[5] and Henlopen received $59,394.39 interest on its note in its fiscal year ending April 30, 1972.[6]

### OPINION

The precise issue before us is whether the interest income due on the promissory notes issued by Miller Properties on the sale of Henlopen Hotel and received by Lake Gerar Hotel Corp. and Henlopen is personal holding company income. Both parties agree that if this interest income is personal holding company income, both corporations qualify as personal holding companies, and that if the interest income is not personal holding income, neither corporation falls within the statutory definition of a personal holding company.

Section 543(a)(1) defines personal holding company income, in part, as that portion of the adjusted ordinary gross income which consists of "Dividends, interest, royalties * * * and annuities" with certain exceptions not here relevant. Section 1.543–1(b)(2), Income Tax Regs., further defines interest for purposes of section 543(a) as "any amounts, includible in gross income, received for the use of money loaned." Petitioners maintain that because they did not loan any amount to the purchaser, they have not received interest for purposes of this regulation. Respondent contends that the interest received from the purchase-money mortgage constitutes personal holding company income.

No case has resolved this precise issue since the enactment of the 1954 Code. Two cases, however, have considered this question under prior Revenue Acts. Since both of these cases are relevant to our decision, as respondent contends, it is with them that we must begin our analysis.

The first case to have dealt with this problem (under the Revenue Act of 1934) is *O'Sullivan Rubber Co. v. Commissioner*, 42 B.T.A. 721 (1940), a Board-reviewed opinion. In that case, the corporation sold its business to Victor Products Corp. for $600,000 in 1932, payable in annual installments of $40,000 or more. Payments of approximately $42,000 were made up to July

---

[5]Lake Gerar Hotel Corp.'s only other income during the year was net capital gains of $3,913 from the sale of Henlopen Hotel and a $15.29 refund of its Federal income tax payment for a prior year.

[6]Henlopen received additional interest of $1,056.70 on a certificate of deposit savings account and $28,010 net capital gain from the sale of Henlopen Hotel in that year.

1934. A new contract was entered into on May 1, 1935, reducing the unpaid purchase price to $340,000. Notes in that amount of a subsidiary of the purchaser were endorsed by others and given to the taxpayer. Interest paid on the notes was included by the Commissioner as personal holding company income. The taxpayer cited the then-applicable regulations in an effort to show that interest in section 351,[7] Revenue Act of 1934, meant only interest on loans, and that since the interest on the subsidiary's notes was not from loans, such interest was not personal holding company income. The Board held that "Interest there means the same as it does in Title I" and, therefore, such interest was personal holding company income. Title I contained the general income tax provisions relating to individual corporations.

The second case in which this question was considered (under the Internal Revenue Code of 1939) was *West End Co. v. Commissioner*, 23 T.C. 815 (1955). There, the taxpayer-company sold certain property to West End Corp. for $55,000 and in connection with the sale agreed to take back a purchase-money mortgage on the premises in the amount of $35,000, the balance of the purchase price to be paid in cash to the taxpayer. During the years in issue, the only income received by the taxpayer-corporation was the interest payments made on the $35,000 purchase-money mortgage. We held that "The income received was clearly personal holding company income within the meaning of section 502(a)[8] of the Internal Revenue Code of 1939," unless the interest from the purchase-money mortgage resulted from the sale of property held primarily for sale to customers in the ordinary course of business (a point not in contention here).

Both of these cases clearly apply to the present fact pattern and would appear to dictate the result here. Neither of these cases arose under the Internal Revenue Code of 1954, however,

---

[7] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.
(b) DEFINITIONS.—As used in this title—
(1) The term "personal holding company" means any corporation * * * if (A) at least 80 percentum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) * * *
[8] SEC. 502. PERSONAL HOLDING COMPANY INCOME.
For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:
(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities.

and it is petitioner's position that the 1954 Code restricted the admittedly broader definition of interest contained in both the Revenue Act of 1934 and the 1939 Code. Respondent contends that the 1954 Code did not change the definition of interest for purposes of defining a personal holding company. Alternatively, he maintains that even if the 1954 Code narrowed the scope of "interest" from the 1939 Code, the purchase-money mortgage interest in issue here still falls within the definition of "interest" under section 543(a)(1).

Both the 1934 Act, in section 351(b)(4), and the 1939 Code, in section 507(a), provided that "the terms used in this section shall have the same meanings as when used in Title I" (1934) or " * * * Chapter 1" (1939). Title I (1934) and Chapter 1 (1939) contained the general income tax provisions relating to individuals and corporations. Regulations 86 under the 1934 Act, art. 351–2(3), defined interest as: "any amounts received for the use of borrowed money which are includible in gross income under Title I." Section 19.502–1(2), Regs. 103, defined interest for purposes of section 502 of the 1939 Code as "any amounts, includible in gross income, received for the use of money loaned."

It is fair to say that interest income as defined in those provisions comport with the definition of interest currently found in section 1.61–7(a), Income Tax Regs., which defines interest for purposes of section 61.[9] There is no dispute that the interest received on the purchase money mortgage is interest for purposes of section 61. Thus, we must determine whether "interest" within the meaning of section 543(a)(1) (with certain statutory exceptions) is as broad in scope as "interest" within the meaning of section 61, or more specifically, whether Congress intended in enacting the 1954 Code to reject the teachings of *O'Sullivan Rubber Co.* and *West End Co.* by eliminating the reference provided in prior statutes to the general provisions defining "interest."

The personal holding company provisions were first enacted as part of the 1934 Act. As noted earlier, section 351(b)(4) of that

---

[9]Sec. 1.61–7(a), Income Tax Regs., states, in part:

As a general rule, interest received by or credited to the taxpayer constitutes gross income and is fully taxable. Interest income includes interest on savings or other bank deposits; interest on coupon bonds; interest on an open account, a promissory note, a mortgage note, or a corporate bond or debenture; * * *

Act stated that "the terms used in [the personal holding company] section shall have the same meaning as when used in Title I [relating to income taxes]." This provision remained in effect until the 1954 Code, although the section number was changed in the Revenue Act of 1937 to section 357, and in the 1939 Code, to section 507(a)(1). When the 1954 Code was enacted, section 543(a)(1), quoted earlier, continued to define personal holding company income as generally including interest.

The legislative history of the 1954 Code is silent on the reasons for the deletion. Petitioner contends that this silence implies a congressional intent to narrow the meaning of the definition because Congress had previously gone to the trouble of referring the definition of interest to other sections in previous Revenue Acts and the 1939 Code. Respondent maintains that this silence supports his position that the definition was not changed. The Senate Finance Committee stated that the 1954 Code changed the 1939 Code definition of personal holding company in only two aspects, not relevant here. S. Rept. 1622, 83d Cong., 2d Sess. 74 (1954); U.S. Code Cong. & Adm. News 4706, 83d Cong., 2d Sess. (1954). The House Ways and Means Committee stated that section 543(a)(1) "corresponds to section 502 of existing law." House Ways and Means Committee, H. Rept. 1337, 83d Cong., 2d Sess. A 176 (1954); U.S. Code Cong. and Adm. News 4315, 83d Cong., 2d Sess. (1954). From this history, we can discern no legislative intent to narrow the scope of the definition of "interest" for personal holding company income purposes and we can only surmise that the reason for the removal of section 507(a), 1939 Code, was to remove excess language.

Moreover, no change was made in the regulations defining interest adopted under the 1954 Code. Section 1.543–1(b)(2), Income Tax Regs. (quoted earlier), which defines interest for purposes of section 543(a)(1) of the 1954 Code, defines interest as it was defined in the regulations issued under the 1939 Code, when sec. 19.502–1(2), Income Tax Regs., removed the reference of gross income to the general income tax provisions which had appeared in the Treasury regulations under the 1934 Act. We note also that the taxpayer in *O'Sullivan Rubber Co.* specifically argued that the regulation required exclusion from personal holding company income, and this Court held, in effect, that the language of the regulation was as broad in scope as the definition of interest in Title I (Revenue Act of 1934). Although

that regulation incorporated the reference to the general income tax provisions found in section 351(b)(4), interest was defined in the regulation as "amounts received for the use of borrowed money." Thus that phrase has been interpreted to include indebtedness received on purchase money mortgages.

It also seems clear that the term "ordinary gross income"[10] as defined in section 543(b)(1) is based upon the concept of "gross income" as defined in section 61. Thus, we believe that for purposes of "ordinary gross income," "interest" must have the same meaning as "interest" for purposes of section 61. In turn, section 543(b)(2) defines "adjusted ordinary gross income" to mean "ordinary gross income" as adjusted in a specific manner, and it therefore follows that "interest" as defined for purposes of "adjusted ordinary gross income" also has the same definition as interest for purposes of section 61, except for that interest (not relevant here) which is specifically removed from the definition of "adjusted ordinary gross income." See *Bell Realty Trust v. Commissioner*, 65 T.C. 766 (1976), affd. without published opinion 546 F.2d 413 (1st Cir. 1976). From this it follows that section 543(a)(1) which defines "personal holding company income" as "the portion of the adjusted ordinary gross income which consists of * * * interest" also includes interest as defined in section 61, except for certain adjustments.

We note, moreover, that the term "rents" as used in section 543(a)(2) includes in its definition interest on the sales price of real property sold to customers in the ordinary course of business (sec. 543(b)(3)). This inclusion was enacted in order to permit real estate dealers receiving interest on purchase money mortgages to avoid personal holding company status. Since this provision would be redundant if a purchase-money mortgage was not included as "interest" for purposes of section 543(a)(1), this further supports our holding that interest includes the interest in issue here. See *W. G. S. Operating Co. v. Commissioner*, a Memorandum Opinion of this Court dated Jan. 1, 1943.

Petitioner next argues that inclusion of interest received on purchase money mortgages as personal holding company income would penalize corporations by broadening the congressional intent of taxing the "incorporated pocketbook of the passive

---

[10](1) ORDINARY GROSS INCOME.—The term 'ordinary gross income' means the gross income determined by excluding [certain named exclusions].

investor where the company is merely holding assets which produce the income." However, we fail to perceive a viable policy basis for according more favorable treatment to interest received on a purchase-money mortgage than to interest earned on any other type of debt held. In the case of a purchase-money mortgage, the seller agrees to forego the use of a portion of the proceeds from the selling price. This is no different in substance than if a loan had been made by the seller to the purchaser and then secured by the assets sold.[11] But even assuming arguendo that petitioners fall outside the asserted congressional intent, the personal holding company provisions provide for a mechanical test in which the absence of an "incorporated pocketbook" motivation is irrelevant. *Bell Realty Trust v. Commissioner,* *supra.* See also Ways and Means Committee, H. Rept. 704, 73d Cong., 2d Sess. 12 (1933): "The effect of this system * * * is to provide for a tax which will be automatically levied upon the holding company without any necessity for proving a purpose of avoiding surtaxes."

We hold, therefore, that interest received on purchase money mortgages is personal holding company income under section 543(a)(1).

### Sale of Condominium

In docket No. 1094-76, among other adjustments, respondent allowed petitioners Michael and Peggy Fabrizio a reduction in the gain which they had reported on the sale of a condominium unit in 1973. Briefly summarized, the relevant stipulated facts are as follows: The Fabrizios purchased a condominium unit in May 1973. They subsequently sold the unit to Development on November 26, 1973, at a price of $64,000, reporting a gain on

---

[11]In this regard, petitioner makes the following argument: lending is the business of A corporation, and it entered upon it voluntarily. It was organized or continued in operation for the purpose of collecting interest, which is the only profit from its loan transactions. B corporation is not in the business of lending money; circumstances put it in the position of receiving interest. The interest received was an incidental aspect of the transaction out of which it arose. Considering these substantial distinctions, can it be said that Congress could not have intended to treat the two types of corporations and the two types of interest differently? We agree with petitioner that the two types of interest are taxed differently. Sec. 542(c)(6) excludes from the definition of a personal holding company certain lending or finance companies which derive 60 percent or more of their ordinary gross income directly from the active and regular conduct of a lending or finance business. Although there has been some argument as to whether interest may be "active" or "passive" (see for example the concurring and dissenting opinions in *Davenport v. Commissioner,* 70 T.C. 922 (1978), dealing with sec. 1244(c)(1)(E)), it does not appear to be a problem in the personal holding company tax area. Moreover, it seems clear that in the example above the interest received by B corporation is "passive" interest.

their 1973 return in the amount of $9,574. On December 14, 1973, Development sold the unit to the Jessups for $64,000, after incurring selling expenses of $5,209. Respondent determined that in substance the Fabrizios had sold the unit to the Jessups, and that the intermediate sale to Development was arranged solely for tax avoidance purposes[12] and should be disregarded. The only immediate effect of respondent's restructuring of the transaction in this fashion is to *decrease* the gain originally reported by the Fabrizios by the amount of selling expenses incurred by Development upon the resale to the Jessups (i.e., the Fabrizios are deemed to have sold the unit directly to the Jessups for $64,000 with the $5,209 of selling expenses incurred by Development being attributed to the deemed-sale by the Fabrizios). The major portion of Development's gross receipts for its fiscal year ended April 30, 1974, was from passive investment income.

In order to avoid litigating the issue,[13] petitioners have waived respondent's adjustment *decreasing* the gain which they reported on the sale of the condominium unit. Thus, there would

---

[12]The alleged tax avoidance arises from the following circumstances: Development was an electing small business corporation under subch. S. Sec. 1372(e)(5)(A) under subch. S provides as follows:

(A) * * * an election under subsection (a) made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation.

The parties have stipulated that if we found that the condominium was sold by Michael and Peggy Fabrizio, then Development's subch. S election terminated for its fiscal year ending Apr. 30, 1974. This is so because of reduced gross receipts arising from elimination of the sale proceeds of the condominium which would, in turn, increase Development's passive investment income to greater than 20 percent. If we found that the condominium was sold by Development, then Development maintained its status as a valid subch. S corporation.

[13]At trial, petitioners objected to the admission of various documents as irrelevant or hearsay. The documents related only to the issue concerning the sale of the condominium. Because of our holding, we do not need to address the issue of the admissibility of this evidence.

appear to be no matter remaining in dispute with respect to the Fabrizios taxable year 1973 (docket No. 1094–76).

> *Decision will be entered for the respondent in docket No. 6940–75.*
>
> *Decision will be entered for the petitioners in docket No. 1095–76.*
>
> *Decisions will be entered under Rule 155 in docket Nos. 1094–76, 4188–76, and 4189–76.*